Next case is People v. Evans and Kimmel and Ms. Ambrose. May it please the court. Counsel, my name is Darren Kimmel and on behalf of the office of the state appellate defender I represent the appellant Jermaine Evans. The promise of Batson is twofold. No one may be excluded from jury service on the basis of their race and anyone accused of a crime has the right to be tried by a jury selected without racial discrimination. But to mean anything this promise must be vouchsafed in each case by the parties and by the court. Here the prosecutor struck the first two of three black veneer members with explanations that should not have been believed. This court must overturn the lower court's ruling and remain for a new trial for two reasons. First, the prosecutor's reason for striking Albert Pullman made no sense and should have been rejected on its face. And second, the prosecutor's reason for striking Shantese Hall was shown to be pretext for discrimination because he had already accepted non-black juror Sarah Wills who had the same issue as Ms. Hall and when he was confronted with this pretext argument the prosecutor refused flatly to explain himself. Mr. Kimmel, what is Mr. Evans race? According to the trial judge he's African American your honor. Okay and is it set forth in the record? The trial judge makes that finding in the Batson hearing room. He says that on the record and in addition says that he is one of three African Americans in the pool. Mr. Coleman and then Ms. Hall are the first two to come up. The third African American veneer member is never identified. It's unclear whether that person eventually serves on the juror or not but the trial judge makes the finding that those two jurors that are the subject of these two potential jurors they're the subject of these two Batson hearings. One juror is actually not important at all. Why? Because one juror is enough your honor. Oh yeah but what if that juror was selected? It makes no difference in this procedural posture because the first issue of Batson is whether there's a prima facie case. That issue is not before the court. That's moved. If this was a prima facie case issue that might be an issue here. That's not at dispute here. One juror is enough once you get past the first stage and we have two here. These are standalone issues but they also reinforce each other. The sum of the parts is actually greater than or the whole is greater than the sum of the parts in the Batson case. All right and I'm sorry but again you say that the trial court identified Mr. Evans race. Yes your honor. Okay and at what point in the proceeding was that? I'll find it for you. It's in volume four and the record is on page 102. It's also on page 100. 100 is the initial Batson challenge of Mr. Coleman and the trial just says at this point this being the first individual of the potential African-American race at least I believe of all the others who have been coming before I don't believe there's a pattern at this Ms. Hall is a very nice juror up for selection. Now where does that say that Mr. Evans is African-American? Oh I'm sorry I apologize your honor. Mr. Evans it's it's in the record it's in the common law record that this race is African-American. Okay I didn't see it in your brief and so this is it's a very fundamental point that when we're starting down the Batson road. It's actually no longer the case that that that fact matters your honor. That was the subsequent cases in the initial authorities of the opening brief under the authorities having those first three cases chart the expansion of Batson from the initial standard. The initial standard was you had to have a black defendant and black jurors to instruct. Now it's any race it doesn't doesn't matter and that's why my opening promise of Batson was so broad. You can't be discriminated on the basis of your race. It doesn't matter who the defendant is. Thank you. Now turning to my first point the prosecutor's reason for striking Mr. Coleman should have been rejected on its face. The Supreme Court stated in Miller L versus Drecke that mischaracterizing a juror's testimony undercuts a prosecutor's credibility and that a claim of vagueness or ambiguity in a juror's answer should not be credited where the prosecutor failed to even ask questions to try to clarify the issue. A number of Mr. Coleman's cousins had been murdered. The first part of the prosecutor's explanation for the strike was that Mr. Coleman could not give an exact number of murdered relatives. That's not something that his testimony supports. He was asked by the prosecutor how many of your relatives were killed and he said several. At that point the prosecutor asked no follow-up questions. If he had asked could you give me exact number and Mr. Coleman had refused that would have supported the answer he gave. As it stands it's a mischaracterization of his testimony. Well am I entitled as a prosecutor to be troubled by the fact that you didn't bring it up? You could your honor and then you could give that reason under Batson. It has to stand or fall on the reason you actually said. Is that part of ambiguity? Ambiguity is not clear. One of the things that's not clear is that specific question. I think victims of crimes no response and then when it's more pointed family members. It's almost when he answers it to me and understanding this is the cold record. It's not whether just cousins and it was in this small town Danville you know far away. I don't know several. I don't know what that means. I think I've had cousins murdered but I'd have to sit down and think how many and when and whether they were first cousin, second cousin, third cousins, fourth cousins. How extensively do you have to go into that to begin to determine whether or not well why would that bother you or yeah that does bother you. I mean to me that's what the ambiguity means. Not just the ambiguity in several but the ambiguity in just the surrounding circumstances. Sure your honor. I'd like to unpack a few things. Yeah. What you just said. First of all demeanor is a favorite reason that prosecutors often give for Batson Challenge. It's often very successful. That's the other thing about this case. For Batson Challenge you can give most any reason. It just has to make sense and it has to be racially neutral on its face and not pretextual which is the second issue. Here he could have made a demeanor answer. He didn't do that. The prosecutor also didn't make a claim that generally Mr. Coleman was ambiguous. The state makes that claim and it's brief. That doesn't actually track with the reason the prosecutor gave. The only ambiguity he claimed was that the answer later that Mr. Coleman gave to defense counsel. It wasn't a question the prosecutor had asked but defense counsel was that his family still had questions. It wasn't a general claim of ambiguity. I would assert that if he had said Mr. Coleman's demeanor was off or that he was generally vague that would have been sufficient. He didn't say those things and we can't make up new reasons now. And that's the other part. The prosecutor then went on to use some of defense counsel's questions and Mr. Coleman's answers to those questions that he didn't know whether drugs were involved. He actually said I have no knowledge at all. I still have questions about the deaths. I think that's pretty reasonable that family members would still have questions about someone's murder. But the prosecutor didn't even ask those questions and that was the only thing he said was vague was that specific answer. He also could have asked the judge for an opportunity to ask further questions at that point. He didn't even try to do that. And under Miller L, the U.S. Supreme Court says we shouldn't give any, we shouldn't afford credibility to a prosecutor who doesn't even try. Here he didn't ask the original questions and he didn't try to follow up. Now case law is clear that discrimination against even one juror is enough to require a new trial. And we have two standalone challenges here, Mr. Coleman and Ms. Hall. But the case law shows that they also reinforce each other, forming a broader pattern. So they're standalone but they also buttress each other. And that brings me to my second point, which is that the prosecutor's reason for striking Shantese Hall was shown to be pretext for discrimination. This is a different, this is a more recent modern Bats and Talons challenge. Even though facially this explanation may look racially neutral, it's shown to be pretext because the prosecutor had already accepted a non-black juror who had the exact same issue. They both said that they had a family member who may have had a past drug case and the prosecutor gave that as his reason for striking Ms. Hall, but he had already accepted Ms. Wills who had the same issue. They were different types of relatives, but that gets to a different issue. Now on this, there are three levels of error here. First, the prosecutor refused to explain himself against this charge of pretext. For Batson to be successful, both sides have to be operating in good faith. That should have destroyed his process and stood on his reason that had been alleged to be inconsistent. Second, the lower court stepped in at that point and made an argument on the prosecutor's behalf. That's improper at this stage of Batson. The lower court should be weighing the evidence and what the parties say, but not helping the parties out by making an argument on their behalf. And third, the lower court at that point analyzed the issue purely in the abstract. It's clear from the record the court actually used the word theoretical in discussing the differences between one person who has a relationship with a nephew and another who has a relationship with a brother. The court wasn't even analyzing the two jurors at issue here. And I go into that in some depth in the opening brief talking about if you look at the record, it seems clear that Ms. Wills, the non-black juror, may have actually been closer to her nephew than Ms. Hall was to her brother. Ms. Wills answered that her nephew had a case to a question about immediate family numbers. She seemed to be quite familiar with the matters of that case. Ms. Hall didn't attend her brother's trial. It happened some time ago, she said, and she wasn't even sure that it was a drug case. So there's a number of problems with what happened here. Now, as the Supreme Court stated in Miller best he can and stand or fall on the plausibility of the reasons he gives. At that point, if the state of reason does not hold up, its pretextual significance does not fade because a trial judge or an appeals court can imagine a reason that might not have been shown as false. In Miller L., the prosecutor gave an initial reason, and then when he was challenged by defense counsel, he abandoned it and he came up with an entirely new reason. And the U.S. Supreme Court said that that reeks of afterthought and that it seems like make way, that they're not going to afford that any credibility, where he didn't even try to defend the initial reason he'd given. This is slightly different, but the same analysis applies. Here, the prosecutor was challenged, and instead of explaining himself, he said he's not required to say anything else and stood on his original reason, which was that Ms. Hall's brother had a drug case. That's inappropriate here, and what should have happened, the trial court should have said, Ms. Hall is on the jury and gone to trial. The reason we're here today is because that didn't happen, and now a new trial is required under Batson. The prosecutor also lost credibility with Ms. Hall by mischaracterizing her testimony as well. He stated that her brother had multiple convictions, something she had never testified to. She said she thought he had a drug case. She didn't say he was convicted. He also called the brother a producer, a higher level of crime, which she had never testified to. So for all these reasons, both for Ms. Hall, but also for Mr. Coleman, this court should reverse the lower court's rulings on the Batson issues and reverse for an entirely new trial. Thank you. Thank you counsel. You'll have additional time on the rebuttal. Ms. Abrams. May I please support the counsel? One of the things that's missing from the record is the jury questionnaires, and they definitely inform the prosecutor's decision in this case. He was just talking about Ms. Hall's responses, and she said she had this bad check case, and she had a sister who was involved in fighting, and then she also had the brother who was involved in a drug offense. But the prosecutor had the jury questionnaires, and he said it was a matter of drug producing, and it was a matter of several cases. Without the jury questionnaires, it's apparent from the record that he used those to inform his decision. He said so right on the record. The four people that he questioned, the four prospective jurors, he said because the reason I'm talking to you is because there's just something on your questionnaire that I'm unsure about. So Miller L. said that you're supposed to examine the entire record, and the jury questionnaire very well may substantiate the prosecutor's assertion about what was going on with Ms. Hall. Now with regard to Albert Coleman, I think it's significant that after the prosecutor said he was vague, and he was. I mean the prosecutor asked him about where did this, or excuse me, not where this occurred, but he asked him about the fact that on his questionnaire he had had this incident in his family, and I'm trying to think of the question that he put to the, excuse me. He asked him one question, and he didn't answer the direct question put to him. He says it didn't occur here. It occurred in Danville, and then he was very reluctant to say how many people were involved. He made it sound almost like a mass murder. He says, well, there were several, mostly first cousins. It might have been second cousins too. He made it sound like it was quite a slaughter, and the fact that he was so vague, that involves a credibility determination right there, and Mr. Welch did not have anything to rebut about the fact when the his answer. I mean it sounds goofy. All these cousins that got murdered, but I don't know much about it. I mean that's not necessarily vague, or it's just goofy. Well, you would think it would be very newsworthy if you had this type of mass. Well, he didn't say that it happened at the same time, or did he? Well, I thought certainly his responses indicated that, or that was the inference that I made, is that, okay, Welch was asking Holman, he says, I want to ask you about your family situation. Any of those murders are homicide-involved drugs, and he said, well, they're still pending. I don't know. There are questions. The family has questions, and he says, how close were you to the individuals killed? They're first cousins. He said, first cousins and second cousins, majority first cousins. The prosecutor had asked him, you've had several family members murdered. Do you mind telling us who they were? And his answer was, they're not from this town, small town Danville. Are you, and he says, how many were murdered? Do you mind? And he says, well, several, just several. My inference, perhaps it was mistaken, is that it occurred at the same time, because he said that the family still had questions, and he says, they're still pending, and he made it sound like it was one incident to me. I mean, if they're all still pending, it's kind of more than coincidental. If all of these cousins were murdered, and it happened at the same time, but they were separate incidents, I certainly... Well, maybe the question, one question is, why should we be here if the prosecutor could have said the same things that you're saying? Which goes back, well, he doesn't. I mean, he, you know, it's pretty, pretty brief. A pretty brief justification, and if you amplify further, if you say, your honor, you may remember that when I began examining these jurors, I made reference to the juror questionnaires, and that's why I had additional questions to this witness, and in those additional questions, this is what occurred, and this is what I think. But by the same token, I mean, the cases instruct that you're to consider the entire record, the trial judges too. I understood, and I'm, maybe I'm not, I'm not trying to get you to concede anything, but I'll ask you, would you have said more? Well, every time I've been to the courtroom, I think I should have said more here, and I don't, I have never learned yet. But if you were advising trial counsel, if you have to respond to a Batson challenge, make a thorough, reasoned answer to the, to the challenge in the question. Hindsight is always 20-20, yes. Oh yeah, it's kind of ambiguous. Well, I mean, this is, this is a really short jury selection. It's not like this is taking place over days, and then he has to remind the court that he had just prefaced his remarks to the four people he questioned. You know, there's something on your jury questionnaires that... I think I remind the court. I know how closely trial judges listen. Well... I like to be reminded of that which I just heard, the same way we repeat things to juries. But even Welch didn't have a comeback for this one. I mean, he was content when the prosecutor said, you know, that he was pretty, pretty vague. Welch had nothing to say about that. He, he didn't have any rebuttal whatsoever, and it's his burden. He had something to say about when he, when he compared Ms. Hall and the other juror whose, whose nephew had a drug charge. He had, he had something to say there that, you know, they're both drug-related charges, and he saw no distinction there. That was his rebuttal to that answer, but when he, he had nothing to say with regard to Albert Coleman because he apparently was concerned enough that he questioned Albert Coleman about this, this situation to see if, if he would be maybe more prosecution-oriented or because of these murders or... But everybody thought he was dodging all the questions put to him. I mean... Did the prosecutor actually make reference to the female juror having three factors? You mentioned three things. You mentioned the, and I know she, there's a reference to the bed check that was resolved, that's 10 years ago, and then my brother... He said it wasn't that big of a deal, but he didn't say it doesn't factor in... But there was something in between. She, she said something, my sister was involved in fighting. Uh, that was... Which we would probably infer, or... No, I guess we wouldn't, then. Maybe domestic violence, maybe... Either that, or battery, or... But he doesn't reference that, or he does? No, he doesn't refer to the sister. He refers, he says the bed check deal is not that big of a deal. He doesn't say it's completely immaterial. But he heard the sister, about the sister, because the juror makes reference to it. And so did the court, but then he says, when he characterizes what's going on with her brother, apparently he knows more than we do, because of the jury questionnaire. And I mean, she might refer to it as, or intimate that it was a single case, but he says it's a matter of producing it. The prosecutor would know from his files, probably the state's attorney's files, and the jury questionnaire, how much is going on with the brother. That, and that's what he told the court. And again, without the jury questionnaires, this court has referred to the absence of jury questionnaires when you're dealing with a Batson issue. The Supreme Court considers them as well. They are, they are relevant consideration, and I don't know if it's a matter... But the real, the jury questionnaire is probably not going to reveal what the prosecutor knows about the juror's brother. We don't know. That's speculative. It could be. Well, because he said... How much detail is she going to, is she going to get? I mean, my brother has a drug, had a drug case. How often are jurors going to... And it was a class X felony, because it involved the, you know, it was a conspiracy to produce and distribute. Well, I doubt that she would have given that kind of detail. So that's in the prosecutor's mind, we think. You think that's a reasonable inference. The fact that he refers to it as a matter of... Distribution. Producing. Producing. Yeah. And he says it's, he makes it sound like it's convictions and charges. That it's not a single incident. But it's the whole package here. I mean, she has her little deceptive practices, which he says that's not that big a deal, but it's probably just the icing on the cake. But then the court also says, at least theoretically, there's the distinction between, that's her brother, and the other one is her nephew. And that's... Let me, Ms. Ambrose, let me ask you about that, if I could. That gets into the third stage of the analysis, and that's where the court, according to Johnson, says that the court's to evaluate the persuasiveness of the prosecutor's justification. So that's that step of the analysis now, where Judge Freitag is looking at the reasoning given by the assistant state's attorney in making that determination. So that's what Johnson says. And then there's this case that Mr. Evans has asked us to look at, and that's the evidence that raises an inference of discrimination creates a primifacious case. This in turn requires an explanation by the prosecutor and an evaluation by the judge whether the prosecutor is honest in articulating a non-racial reason for each challenge. So if Johnson's saying that you have to look at the, the trial court has to look at the persuasiveness of the prosecutor's justification, then you have the Superbee Ryan case saying that the trial judge is to look at and evaluate the honesty of the articulated reason. Now I'm wondering if those are one and the same, because I can certainly envision a persuasive argument being made by a prosecutor that's purely pretextual, that's perhaps not the honest reason that the prosecutor is giving or is using a peremptory challenge. So does the trial court have to make an evaluation as to the honesty of the prosecutor in asserting a challenge, or simply look at the persuasiveness? Because here it looks to me from the record, Judge Freitag, the trial court judge, did examine the persuasiveness of the prosecutor's justification, but there's no evaluation as to the honesty of the prosecutor. Well there's no explicit evaluation of his honesty. I mean he said there's some race-neutral distinctions between Ms. Hall and Ms. Wills, and he said that was the closer call. He didn't have any problems with Albert Pullman, and as I said before, I don't think... Right, and just look at, and I'm sorry I don't have the full names here, but I'm just, S.H. and S.W., if you just look at those two, one had the brother that had a drug-related charge, one had the nephew with the drug-related charge, and that's where the trial judge went into further explanation or maybe analysis as to why there was a qualitative difference between the two of them. So is it there that you're saying that the trial judge was making an evaluation of the prosecutor? I think that's implicit. I mean the federal courts at least don't require that explicit finding. I think I cited a case to that effect in my brief, but certainly if you're going to make this evaluation, you always have to consider what the prosecutor is saying and just to try to decide whether he or she's coming up with a pretextual reason or if there's really some meat behind it, and the, you know, that they were not similarly situated exactly, and the defense counsel was saying that they're precisely on the same footing. They weren't. The one juror had her own minor incident with the criminal justice system and a brother who apparently had a far, you know, a more extensive background in drug-related cases than Ms. Wills did. I take it that you would say that the trial court's fleshing out of that particular distinction was appropriate, but what if he had gone into some other basis that the prosecutor hadn't identified as a potential distinction as to why that would be an unfavorable juror for the state and it was a non-race-related reason? Would it be appropriate for the court to identify that reason that the prosecutor did not? I would say as long as it's on the record, he could certainly refer to the fact that the prosecutor had overlooked maybe something because they, the cases instruct to look at the entire record. You have to look at the whole ball of wax. It is the persuasiveness of the reason given, but you're not to ignore the record evidence before the court either. It's not just limited strictly to the prosecutor's reasons. Now, if if there was some undisclosed factor in the jury testimony, I guess that would make it a little more difficult. Here you've got, well, the one juror saying, you know, it's a nephew. The other one says it's a brother. If that were not apparent from the record, it would be inappropriate for the court to say, well, based on the jury questionnaires or something like that, to be extracting things that weren't quite as readily apparent. But Mr. Welch was saying they precisely situated. That was his rebuttal. And so the court, of course, is going to say, no, they're not exactly the same. There is that difference in blood ties between the two of them. But certainly the court is to consider the prosecutor's demeanor and credibility. And that does factor into the equation. But I still think the court has to consider the record evidence as well, especially the testimony they give during jury selection. Does that adequately answer your question? Thank you. May it please the court. I'd like to discuss a few issues from that. First, the jury questionnaire issue, and then this issue of whether there were multiple reasons given for the strike of Ms. Hall or whether it was one reason. So first on the jury questionnaires issue, the state referred to the jury questionnaires. And one of your honors asked a question about what the jury questionnaires might have contained. And the state referred to that as being speculative. And that's exactly what this issue is. We don't know what was in the jury questionnaire. But I asked whether it was speculation regarding how expansive her answer would be. And it is speculative. We don't know what was in there, but we don't need to know. The state actually cites no cases. She just now referred to Illinois case law saying that Illinois courts have rejected Batson claims where jury questionnaire forms weren't in the record. She cites no such cases in her briefs. The closest the state comes is People v. Pertz, a second district case. That wasn't a Batson case, though. It dealt with the defendant argued that photographs of a crime victim were too gruesome. He argued this on appeal. But he didn't supplement the photos to the appellate record. And the court said we can't process your argument if we don't have the photos so you lose. There's no cases that say that in Batson you have to include the jury questionnaires automatically. It's only if your argument is incomplete without them. Well, but you've said that the prosecutor is mischaracterizing. Well, what if the jury, I mean, yeah, this is speculative, but it's the record. And you're going to provide the record. The jury questionnaire says, she says, my brother is charged with producing meth. My brother got charged with producing meth. And then later she references it in a drug case. And the prosecutor knows it because he recognizes the brother's name. He's a felony prosecutor. Maybe he's prosecuting the case. And then he makes reference to production or distribution. That was my mischaracterization, production. Your Honor, if he had said that in his Batson explanation, this would be an entirely different case. He doesn't refer to the jury questionnaire there. And actually, the state mentions that he does refer to jury questionnaires at one point. He does. That cuts against the state because he actually does it with Mr. Coleman. And he does it when he says, there was something on your jury questionnaire form that I had a question about, that it was inconsistent. That's why he talks to Mr. Coleman. He said something different on his form than he said in court. So is this because the state thinks that the jury questionnaires might rebut your argument? Are they responsible for supplementing the record with the jury questionnaires? Are you responsible for asking for the jury questionnaires to be part of the record? It's only an issue if it's required to resolve the case. If my argument required it, I would have the burden of supplementing it. If the state's argument requires it, then the state needs to supplement the record. But the argument is logically inconsistent, that he asked questions of people who made inconsistent statements, verbally and written forms. The state now argues that, well, maybe this is explained by the fact that perhaps Ms. Hall wrote something different on her form than she said in court. Yeah, I don't think it necessarily is inconsistency. I think people sometimes, in answering a jury questionnaire, may write something on it that's either more specific or the opposite, more ambiguous. And then they only go into it or try to back away from it. And it's a big question. I'm sorry, Your Honor, I didn't mean to interrupt. If the prosecutor had said something along those lines in his explanation, this would be a very... So what this case may really be about is the prosecutor may have had what could be legitimate and or defensible reasons, race neutral, had he explained them better. That's one way to look at it. Absolutely. Or it may actually be, there may actually be discriminatory challenges that should be. It's possible, Your Honor, and that's the long quote I read from Miller-Ell at one point, sums this up perfectly. The state says we have to look at the whole record. That's not the law. The U.S. Supreme Court says that, quote, a prosecutor has to state his reason as best he can and stand or fall on the plausibility of the reasons he gives. That's what this case is about. He didn't give sufficient reasons. He may have had better reasons. When you're analyzing it, though, or evaluating it, the musings of the trial court evaluating it, you characterize them as he's making the prosecution's argument. If we had Judge Freitag here, he might be saying, I'm giving you my thought process, and that's the thought process I use in evaluating the answers that the prosecutor gave and what Mr. Wiltz gave in response. Your Honor, I see my time has expired. You can answer. That may be what was going through the trial court's head. We don't know. But the Supreme Court has said that the case has to stand or fall on what the prosecutor says, and courts, be they the trial court or the appellate court, the U.S. Supreme Court says exactly. Courts can't step in after the fact. That means even during the Batson hearing and make it right for the prosecutor when the prosecutor doesn't do it himself. And that's what happened here. Thank you. Thank you. I'll take the stand. Your advisement is stand and recess until the readiness of the next case.